**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

**RAY BENSON,**

      **Plaintiff,**

**vs.**                               **CIVIL ACTION NO. 1:20-CV-00411**

**ANDREW SAUL,
COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

<u>**PROPOSED FINDINGS AND RECOMMENDATION**</u>

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Order entered June 18, 2020 (ECF No. 3), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support of Plaintiff's Motion for Judgment on the Pleadings and Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 19, 20, 22)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's request for judgment on the pleadings (ECF No. 19), **GRANT** Defendant's request to affirm the decision of

the Commissioner (ECF No. 22); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this action from the docket of the Court for the reasons stated *infra*.

**Procedural History**

The Plaintiff, Ray Benson (hereinafter referred to as "Claimant"), protectively filed his applications for Titles II and XVI benefits in March 2017 alleging that his disability began July 1, 2015 because of a pace maker, heart murmur, depression, "legs and feet hurt all time", "[a]fib with rbr", anxiety, "[c]an't raise left arm above head because it pulls leads on", "[d]izzy and passout when over exerted", "[w]inded", "[s]tomach hurts all the time", "[d]ifficulty sleeping", asthma, and bee allergies. (Tr. at 15, 214-220, 221-226, 234-235, 242) His claims were initially denied on June 13, 2017 (Tr. at 121-131, 132-142) and again upon reconsideration on September 7, 2017 (Tr. at 144-151, 152-158). Thereafter, Claimant filed a written request for hearing on November 10, 2017. (Tr. at 159-160)

An administrative hearing was held on March 27, 2019 before the Honorable David Lewandowski, Administrative Law Judge ("ALJ"). (Tr. at 34-59) On May 29, 2019, the ALJ entered an unfavorable decision. (Tr. at 12-33) On July 15, 2019, Claimant sought review by the Appeals Council of the ALJ's decision. (Tr. at 211-213) The ALJ's decision became the final decision of the Commissioner on April 20, 2020 when the Appeals Council denied Claimant's Request. (Tr. at 1-6)

On June 17, 2020, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Defendant, (hereinafter referred to as "Commissioner") filed an Answer and a Transcript of the Administrative Proceedings. (ECF Nos. 13, 14) Subsequently, Claimant filed a Motion for Judgment on the

Pleadings and Memorandum in Support of Motion for Judgment on the Pleadings (ECF No. 19, 20); in response, the Commissioner filed a Brief in Support of Defendant's Decision. (ECF No. 22) Consequently, this matter is fully briefed and ready for resolution.

## Claimant's Background

Claimant was 21 years old as of the alleged onset date and considered a "younger person" throughout the underlying proceedings. See 20 C.F.R. §§ 404.1563(c), 416.963(c). (Tr. at 27) Claimant has a high school education, having obtained his GED. (Tr. at 27, 38, 235). Prior to his alleged onset date, Claimant was previously employed doing maintenance and dishwashing for a faith-based outreach program for at-risk children and as a stocker for a retail store (Tr. at 38-39, 235).

## Standard

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third

inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(f), 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. §§ 404.1520(g), 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Sections 404.1520a(c) and 416.920a(c). Those Sections provide as follows:

(c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture

4

of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.

(2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 to this subpart.

(4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. §§ 404.1520a(d)(1), 416.920a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. §§ 404.1520a(d)(2), 416.920a(d)(2).

5

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. §§ 404.1520a(d)(3), 416.920a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. §§ 404.1520a(e)(4), 416.920a(e)(4).

**Summary of ALJ's Decision**

In this particular case, the ALJ determined that Claimant met the requirements for insured worker status through June 30, 2016. (Tr. at 17, Finding No. 1) Moreover, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date of July 1, 2015. (Id., Finding No. 2) Under the second inquiry, the ALJ found that Claimant had the following severe impairments: complete heart block with pacemaker placement; atrial fibrillation; and lower extremity and back pain. (Id., Finding No. 3)

At the third inquiry, the ALJ concluded Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 20, Finding No. 4) The ALJ then found that Claimant had the residual functional capacity ("RFC") to perform light work except Claimant:

> can occasionally perform postural activities, but never climb ladders, ropes, or

scaffolds; and never overhead reach with the left upper extremity. He should avoid concentrated exposure to temperature extremes, vibrations, pulmonary irritants, wetness, and humidity; and avoid exposure to industrial hazards.

(Tr. at 20, Finding No. 5)

At step four, the ALJ found Claimant has no past relevant work. (Tr. at 27, Finding No. 6) At the fifth step, the ALJ determined that in addition to the immateriality of the transferability of job skills, Claimant's age, education, work experience, and RFC indicated that there are jobs that exist in significant numbers in the national economy that Claimant can perform, to-wit: cleaner (light/unskilled); hand presser (light/unskilled); and mail room clerk (light/unskilled). (Tr. at 27-28-146, Finding Nos. 7-10) Finally, the ALJ determined Claimant had not been under a disability from July 1, 2015 through the date of the decision. (Tr. at 28, Finding No. 11)

**Claimant's Challenges to the Commissioner's Decision**

Claimant alleges the ALJ erred at the fifth step in the sequential evaluation process to the extent that the ALJ's hypothetical to the vocational expert at the hearing limited Claimant to "**frequent** postural activities but occasional stair climbing, and no ladders, ropes or scaffold climbing", however, the controlling RFC limited Claimant more, where he could "**occasionally** perform postural activities, but never climb ladders, ropes, or scaffold." (ECF No. 20 at 9) (**bold** in original) Because there is a great variance between these functioning levels, the vocational expert's opinion concerning those jobs Claimant is capable of (cleaner, hand presser, mail clerk) has no evidentiary value and therefore does not constitute substantial evidence to support the ALJ's findings. (Id. at 10) Claimant therefore asks this Court to remand to correct these errors. (Id.)

In response, the Commissioner points out that while the ALJ asked the vocational expert to identify jobs that Claimant can do based on frequent postural activities, he asked a second

hypothetical, which mirrors the controlling RFC, that further limited Claimant to occasional postural activities, and the identified jobs remained the same. (ECF No. 22 at 6-7) The Commissioner asserts that the final decision is supported by substantial evidence and asks this Court to affirm. (Id. at 7-8)

**The Relevant Evidence of Record**[1]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and discusses it below.[2]

Medical Evidence:

Claimant had been evaluated for episodes of syncope and/or chest pain, particularly in the first year and a half after the pacemaker was placed (Tr. at 23, 330, 334, 351, 364).[3] Since October 2015, Claimant's providers recommended conservative treatment for his heart condition and his symptoms related thereto were managed via medication (Tr. at 23, 463, 459, 447, 405, 565, 593,

Claimant also received treatment for his heart from Stephen Ward, M.D., at Bluefield Cardiology. Dr. Ward's records note that Claimant has a history of complete heart block requiring pacemaker placement and that he was subsequently found to have atrial fibrillation. (Tr. at 23, 436, 506) Dr. Ward noted that Claimant did not tolerate multiple different drug agents, but as of May 25, 2017, he was "doing much better here recently." (Id.) However, Dr. Ward noted that Claimant

---

[1] The ALJ recognized that with respect to Claimant's Title II application, the adjudication period begins on July 1, 2015, Claimant's alleged onset date, through June 30, 2016, his date last insured (DLI); with respect to Claimant's Title XVI application, the adjudication period begins on March 9, 2017, the application date, through May 29, 2019, the date of the ALJ's decision. (Tr. at 21) See 20 C.F.R. §§ 404.101(a), 404.131(a), 416.330.

[2] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

[3] The ALJ referenced treatment records from the emergency department at Bluefield Regional Medical Center dated December 2, 2015, November 30, 2015, April 19, 2015, August 30, 2014, and August 24, 2014, respectively.

"had four episodes greater than four hours" and that Claimant reported "feeling limited in his exercise and activities compared to his peers." (Tr. at 24, 506) Dr. Ward also noted a referral for consideration of surgical maze or catheter-based ablation, though Claimant was unsure, however, Dr. Ward preferred an evaluation as antiarrhythmic therapy had not been recommended by another provider (Tr. at 23, 507, 546), however, the record does not show that Claimant pursued this (Id.).

Regarding Claimant's lower extremity pain, the record showed that when he was evaluated for near syncope in November 2015, he presented with full, normal range of motion, grossly intact cranial nerves, 5/5 motor strength in all extremities, grossly intact sensation, and normal gait (Tr. at 25, 335). Subsequent physical examinations in 2016 showed similar findings (Tr. at 25, 321, 331). Records show that Claimant began voicing complaints about his lower extremities in the latter part of 2017 (Tr. at 25, 589, 592). Examinations in January and February 2018 showed some musculoskeletal tenderness, no edema, decreased sensation in the right lower extremity, but normal range of motion and intact deep tendon reflexes; Claimant was started on gabapentin (Tr. at 25, 550, 544). By March, Claimant reported muscle aches, but denied any weakness or difficulty walking and reported that the gabapentin "helped him tremendously"; he was having very limited amount of discomfort in his legs throughout the day and able to complete his activities of daily living without difficulty (Tr. at 25, 540). Throughout the latter part of 2018, although Claimant reported improvement with gabapentin, he did exhibit paraspinal muscular hypertrophy, a positive straight leg raise test, and paresthesia in the lower extremities, but no weakness or decreased reflexes, and ambulation without difficulty (Tr. at 25, 587, 537, 538, 534). In November 2018, Claimant reported his lower extremity symptoms were tolerable on Neurontin (Tr. at 25, 564).

**The Administrative Hearing**

<u>Claimant Testimony:</u>

Claimant testified that he has a history of atrial fibrillation dating back to his teenage years and that over time, his heart problems became worse. (Tr. at 42) He described them as "it's just like I said, my heart rate goes up. I get dizzy. I feel tired. I have to lay down and stuff like that, you know." (<u>Id</u>.) Prior to the placement of a pacemaker, he experienced passing out episodes on a regular basis. (Tr. at 42-43) Even after placement of the pacemaker, Claimant testified that he continues to have episodes of passing out and dizziness. (Tr. at 43) Claimant stated he experienced approximately six passing out episodes in the two years prior to the hearing. (Tr. at 45) Since placement of the pacemaker, Claimant testified that he has dizzy spells three or four times per week and will have to lay down for about two to three hours until they pass. (Tr. at 44) He described these spells, "I just - - everything is moving and, like, I just can't keep nothing in, like a right perspective. Like, everything is moving too fast and I just got to sit down and lay down." (<u>Id</u>.)

In addition to dizzy spells, Claimant testified he experiences fatigue, that the "dizziness and fatigue goes kind of hand in hand", though the dizziness "is my main problem" and if he pushes his limits, he gets dizzy and needs to lay back down. (Tr. at 45-47) Claimant testified that his problems with dizziness and fatigue affect his ability to function; they affect his ability to concentrate or remember things, to such an extent that he was unable to perform mechanical work that he had done throughout his life:

> I just can't concentrate to do it. I forget where most of the parts go if I try to do it. I have to have my friend do it for me because I forget a lot when I get dizzy. I just get so disoriented I can't - - I don't have the - - like I said, I don't really have the patience to deal with because I'm so agitated.

(Tr. at 48)

Claimant also testified as to the physical impact the pacemaker installation had upon his physical abilities:

> [B]efore I had my pacemaker I could almost anything that any normal person could do and when I got it it's just like I can't do what I like to do. And after - - because most car parts are heavy and I have to watch what I lift so I don't pull wires. And like I said, if I get dizzy I don't remember much. So I'm just like, I get somebody else to do it. . . . I can't really lift much with my left arm. Like, five pounds is okay, but if I go above five pounds I can really feel the pull of the wires on my pacemaker. . . . And I can feel - - like, when it pulls the wires where the wires are hooked into the top and bottom part of my heart, it moves it up and out. And that helps cause dizziness and makes me want to pass out and stuff and not feel good.

(Tr. at 48-49)

Claimant also testified that he has pain in his legs and feet, and that after the pacemaker placement, his pain got worse. (Tr. at 50) He said that he was prescribed gabapentin for the pain, which helped some, but even after the dosage was increased, after a period of time, his pain came back and he was "basically back to square one." (Tr. at 50-51)

Vocational Expert ("VE") Testimony:

The ALJ asked the VE the first hypothetical:

> to assume an individual of the claimant's age, education and work experience capable of performing light exertional work with frequent postural activities but occasional stair climbing, and no ladders, ropes or scaffold climbing. The individual should avoid concentrated exposure to temperature extremes, wetness, humidity; no ice, vibrations, pulmonary irritants; and should avoid exposure to industrial hazards. The individual cannot perform overhead reaching with the left upper extremity.

(Tr. at 53) In response, the VE testified that the individual could perform certain unskilled jobs, including a cleaner, such as a night cleaner of offices, a hand presser in a laundry, and a mailroom clerk. (Tr. at 53-54) The ALJ then asked a second hypothetical, to assume the same individual with

11

Claimant's vocational and educational background and capable of performing light exertional work

> with occasional postural activities, but no ladder, rope or scaffold climbing. The individual should avoid concentrated exposure to temperature extremes, vibrations, pulmonary irritants, wetness, humidity. The individual should avoid exposure to industrial hazards with no overhead reaching with the left upper extremity.

(Tr. at 54) In response, the VE testified that the same three jobs previously identified would remain.

In response to questioning by Claimant's attorney, the VE testified that in addition to the limitations provided, that if the individual experienced dizziness or leg pain occurring three to four days a week during business hours requiring him to lay down for two to three hours during business hours, then the individual would be precluded from all substantial gainful activity. (Tr. at 55-56)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are

rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." <u>Blalock</u>, 483 F.2d at 775.

**<u>Analysis</u>**

<u>DOT Consistency at the Fifth Step of Sequential Evaluation Process:</u>

Claimant has asserted the ALJ committed error at the fifth step when he failed to resolve the apparent conflict between the VE's testimony and his RFC's restriction where he "can occasionally perform postural activities[.]" (ECF No. 20 at 9) As previously mentioned herein, at the final step in the sequential evaluation process, the ALJ determined that Claimant could perform light work with additional limitations. (Tr. at 20) The ALJ noted the VE testified that there were jobs that Claimant could still perform despite his limitations: "cleaner" (DOT[4] #323.687-014); "hand presser" (DOT #363.684-018); and "mail room clerk" (DOT #209.687-026) (Tr. at 28). The ALJ then determined that pursuant to Social Security Ruling (SSR) 00-4p, the VE's testimony was consistent with the DOT, and to the extent that it was inconsistent, his testimony is consistent based on his professional experience. (<u>Id</u>.)

> The Fourth Circuit has held "Although we could guess what these occupations require in reality, it is the purview of the ALJ to elicit an explanation from the expert ..." <u>Pearson v. Colvin</u>, 810 F.3d 204, 211 (4th Cir. 2015). The duty rests with the ALJ, not a reviewing court, to find facts and resolve conflicts. <u>Radford</u>, 734 F.3d at 296; see also <u>Brown v. Colvin</u>, 639 Fed. App'x. 921, 923, 2016 WL 50298, at *2 (4th Cir. Feb. 9, 2016) ("We remand to avoid engaging in fact-finding 'in the first instance' and to allow the ALJ to further develop the record so that we can conduct a meaningful judicial review"). And, as the Fourth Circuit has repeatedly made clear, the ALJ must provide a sufficient explanation of his findings to allow for meaningful appellate review. See <u>Mascio</u>, 780 F.3d at 637 ("Because we are left to guess about how the ALJ arrived at his conclusion on [Plaintiff's] ability to

---

[4] "DOT" refers to Dictionary of Occupational Titles.

perform relevant functions and indeed, remain uncertain as to what the ALJ intended, remand is necessary."); Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986) (holding that without an adequate explanation, "it is simply impossible to tell whether there was substantial evidence to support the determination").

See Cunningham v. Berryhill, No. 3:16-cv-02525, 2017 WL 1259587 (S.D.W. Va. Mar. 31, 2017) (Tinsley, M.J.). Thus, the pertinent law is clear that where there is an apparent conflict between a VE's testimony and the DOT, the adjudicator has an affirmative responsibility to ask about the conflict between the VE's testimony and the information provided in the DOT. Policy Interpretation Ruling: Titles II And XVI: Use Of Vocational Expert And Vocational Specialist Evidence, And Other Reliable Occupational Information In Disability Decisions, SSR 00-4p, 2000 WL 1898704, at *4; see also Keller v. Berryhill, 754 Fed. App'x. 193, 199 (4th Cir. 2018). As stated *supra*, it remains the exclusive duty of the ALJ to identify any apparent conflicts in the evidence and to resolve them. Indeed, the burden of proof shifts to the ALJ at the fifth step of the sequential evaluation process, because "[i]n order to support a finding that you are not disabled at this fifth step . . . we are responsible for providing evidence that demonstrates that other work exists . . . that you can do, given your residual functional capacity and vocational factors." See 20 C.F.R. §§ 404.1560(c)(2) 416.960(c)(2). In determining the existence of jobs that a claimant can perform, the ALJ will consider both the DOT and a VE's testimony. See Id. §§ 404.1566, 416.966. SSR 00-4p expressly allows the ALJ to rely upon a VE's "experience in job placement or career counseling" among reasonable bases for relying on the evidence from the vocational experts rather than the DOT. See SSR 00-4p, 2000 WL 1898704, at *2.

As pointed out by the Commissioner, not only did the ALJ specifically ask a hypothetical to the VE that mirrored the controlling RFC with regard to Claimant's physical limitations, none

of the three jobs identified by the VE requires more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling. (ECF No. 22 at 7) More specifically, the DOT description for the "cleaner" job requires only occasional stooping, kneeling, and crouching, whereas climbing, balancing, and crawling are not present;[5] and the DOT descriptions for the "hand presser" and "mail room clerk" jobs indicate that climbing, balancing, stooping, kneeling, crouching, and crawling are not present.[6] "Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications." See Id. §§404.1566(b), 416.966(b). This Circuit has long held that "[i]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."[7]

Accordingly, the undersigned **FINDS** that the ALJ met his burden of proof at the fifth step of the sequential evaluation and the ALJ's determination that the VE's testimony was consistent with the information contained in the DOT is supported by substantial evidence.

In sum, the undersigned **FINDS** the ALJ's unfavorable decision is supported by substantial evidence.

## Recommendations for Disposition

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court

---

[5] See DICOT 323.687-014 (G.P.O.), 1991 WL 672783.
[6] See DICOT 363.684-018 (G.P.O.), 1991 WL 673018; DICOT 209.687-026, 1991 WL 671813.
[7] See Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005).

**DENY** the Claimant's request for remand (ECF No. 19), **GRANT** the Defendant's request to affirm the decision (ECF No. 22), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: March 18, 2021.



Omar J. Aboulhosn
United States Magistrate Judge